IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHOWCOAT SOLUTIONS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 1:18cv789-ALB-SMD |
| | ) |
| ANDY BUTLER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**[1]

Pending before the Court is Plaintiff's Motion for Contempt (Doc. 30), Defendant's Counter Motion for Contempt (Doc. 38), and Plaintiff's Supplemental Brief in Support of Motion for Contempt (Doc. 61). On May 8, 2019, the undersigned Magistrate Judge held a hearing on the motions. For the reasons that follow, it is the recommendation of the undersigned that Plaintiff's Motion for Contempt (Doc. 30), as supplemented, be granted in part and denied in part, and that Defendant's Counter Motion for Contempt (Doc. 38) be denied.

**I.   DISCUSSION**

**A.  Background**

Showcoat Solutions, LLC, ("Plaintiff") is a company that sells hair-growth products in the agricultural industry. *See generally* (Doc. 76) at 4-5. This case arises from allegations

---

[1] The United States District Judge previously assigned to the case referred the matters addressed in this recommendation to the undersigned Magistrate Judge for "determination or recommendation as may be appropriate." (Doc. 43).

that Defendants stole Plaintiff's product formulas and used those formulas to manufacture and sell their own products under the name Code Blue, as well as allegations that Defendants created and sold counterfeit goods using Plaintiff's ShowCoat and other names, likenesses, and intellectual property. *See generally* (Doc. 76).

Contemporaneous with its Complaint, Plaintiff filed a Motion for Temporary Restraining Order (Doc. 2), which alleged irreparable and immediate harm resulting from Defendants' alleged counterfeiting and sale of Plaintiff's products. The United States District Judge previously assigned to the case held a hearing on the Motion, but was unable to conclude the hearing in the time allotted. Therefore, the District Judge entered an interim Order, which was agreed to by the parties, and continued the hearing for a later date. *See* (Docs. 11, 12). On the day before the hearing was to continue, the parties filed a Joint Motion for Order to Cancel Hearing and Enter Consent Interlocutory Injunction (Doc. 18). The Court granted the parties' request, cancelled the hearing, and entered the proposed Interlocutory Injunction, which reads, in relevant part:

1. All Defendants shall cease using the name "ShowCoat," "Volumax," "Pop Shot," or using the ShowCoat or similar marks in the manufacture, marketing, or sale of any goods, or acting in concert with others to do the same;

2. All Defendants shall not manufacture, market, or sell any products developed in whole or in part from the ShowCoat formula or acting in concert with others to do the same;

3. All parties shall preserve and demand the preservation of all computers, computer tablets, phones, smart phones, external media (CDs, thumb drives, external hard drives, and the like), servers, cloud-based storage, and email accounts on which they have stored any communication or

information with, about, referring to and/or relating to ShowCoat, ShowCoat's marks, ShowCoat's formula;

4. All parties shall preserve and demand the preservation of all materials related to the manufacture, marketing, or sale of livestock hair-enhancement products. Nothing herein prevents any party from carrying on its normal business operations except as otherwise prohibited by this order;

5. Plaintiff, its agents, officers, and members shall refrain from using Defendants' names or disclosing identifying information about Defendants in connection with this matter, or acting in concert with others to do the same. In addition, Plaintiff shall delete, destroy, or remove, to the extent possible, all press releases, announcements, social media posts, or any other public materials it has produced using Defendants' names or disclosing identifying information about Defendants in connection with this matter. Nothing herein prevents Plaintiff from informing the public that Wilson and Butler are no longer dealers for Plaintiff, nor that there may be counterfeit products in circulation in the market, but such information shall not be presented in a way that implicates Defendants or associates them with wrongdoing;

6. No security will be required at this time;

7. This order shall remain in effect during the pendency of this litigation and until further order of the court[.]

(Doc. 19).

### B. The Parties' Motions

On December 5, 2018, Plaintiff filed its Motion for Contempt (Doc. 30). Plaintiff argues that Defendants Chris Wilson ("Wilson") and Andy Butler ("Butler"), (collectively "Defendants" for purposes of this recommendation), have not complied with this Court's Interlocutory Injunction because of certain social media posts appearing on their Twitter and Facebook pages. *See generally* (Doc. 30). According to Plaintiff, Defendants' posts

3

use the name "ShowCoat" "in the manufacture, marketing, or sale" of Defendants' product, Code Blue, which competes with ShowCoat and is allegedly created by the misappropriation of ShowCoat trade secrets. *Id*. at 4.

In response, Defendants assert that, after the Interlocutory Injunction was entered, they "attempted to remove all references to ShowCoat from their various social media accounts, but because of the volume of material on these accounts, some items were missed." (Doc. 38) at ¶ 1. Defendants further note that, although they believe the posts at issue do not actually violate the Interlocutory Injunction, they have nonetheless removed the offending posts referenced in Plaintiff's contempt motion. *Id*. at 2-10.

Within their response to Plaintiff's Motion for Contempt, Defendants move the Court to hold Plaintiff in contempt for violating paragraph five of the Interlocutory Injunction, which orders Plaintiff to "refrain from using Defendants' names or disclosing identifying information about Defendants in connection with this matter[.]" *Id*. at 7; (Doc. 19) at ¶ 5. Defendants state that Plaintiff's Facebook page violates this paragraph because it lists Defendants Butler and Wilson as "dealers" and contains a picture of Defendant Butler's hair, "claiming that it is the hair of a former cancer patient who used ShowCoat to regrow his hair." (Doc. 38) at ¶ 10.

In response to Defendants' Counter Motion for Contempt, Plaintiff points to the plain language of the Interlocutory Injunction and asserts that it has not been violated because Plaintiff has not used Defendants' names or identifying information *in connection with this matter*. *Id*. at 6; (Doc. 19) at ¶ 5. Thus, Plaintiff asserts that the posts referenced

4

by Defendants do not violate the Interlocutory Injunction because they do not "reference this litigation in any way – whether directly or indirectly." *Id*.

### C. Civil Contempt

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *S.E.C. v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981).[2] In order to establish that a party has committed civil contempt, the movant must prove, by clear and convincing proof, that: "1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous;[3] and 3) the alleged violator had the ability to comply with the order." *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000). When it has been established by clear and convincing evidence that a party has violated a court order, the burden then shifts to that party to show an inability to comply. *United States v. Rylander*, 460 U.S. 752, 757 (1983); *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (noting that once there has been a prima facie showing of contempt, the burden shifts to the alleged contemnor to produce evidence explaining his noncompliance").

### D. Plaintiff's Motion for Contempt

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[3] There is no dispute that the Interlocutory Injunction entered by this Court was valid and lawful, nor do the parties argue that the Order was not clear, definite, and unambiguous.

5

### *1. Social Media Postings*

Plaintiff submits the following evidence that Defendants are in violation of the Interlocutory Injunction (Doc. 19).

1. Exhibit B: A tweet from the Twitter page of Chris/Carolyn Wilson which reads, in part, that they "recently found out that the ShowCoat products are not what they seem" and that "[t]hey have not been truthful to you or us, as dealers[.]" (Doc. 30-3) at 1. Tweets from the Twitter page of Chris/Carolyn Wilson, dated from December 2014 through March 2018, which reference ShowCoat and other ShowCoat Solutions products and how to order the products from Chris and/or Carolyn Wilson. *Id.* at 2-16.

2. Exhibits C and D: Tweets from the Twitter page of Wilson Farms, dated from September through November 2018, which reference Defendants' product Code Blue (ShowCoat's competitor and the product Plaintiff claims is using the ShowCoat formula) and how to purchase Code Blue. (Doc. 30-4) at 1; (Doc. 30-5) at 1-2.

3. Exhibit E: Pictures of bottles of ShowCoat, bottles of Code Blue, and various livestock, circa 2015, on Chris Wilson's Facebook page. (Doc. 30-6) at 1-6.

4. Exhibit F: Several videos and pictures containing a logo or image of ShowCoat that were shared by individuals not named in this lawsuit to Chris Wilson's Facebook page. (Doc. 30-7) at 2-5.

5. Exhibits G and H: Customer testimonials on the Facebook page of Chris Wilson regarding the efficacy of Code Blue as well as inquiries from customers—from August 2016—regarding the price of a gallon of ShowCoat. (Doc. 30-8) at 2-5; *see also* (Doc. 30-9).

6. Exhibit I: A Facebook post from Carolyn Wilson which reads, in part: "That gal at ShowCoat just isn't happy with that [sic] fact that we caught them doing what they were doing to us and more importantly, our customers, so we left. . . . We are done selling their overpriced watered down product and they are mad. . . .We know when a product has changed and isn't working. . . . We sell a product that is 100% real and is a hit with huge cattle operations all over the country, for half the price[.]" (Doc. 30-10) at 2-3.

7. Exhibit J: The Facebook page of Andy Butler, which appears to indicate that Butler Cattle Company is associated with ShowCoat products. (Doc. 30-11) at 2-4.

Prior to Plaintiff filing its Motion for Contempt, counsel for both parties communicated via email regarding certain social media posts of Defendants that were allegedly in violation of the Interlocutory Injunction. (Doc. 37-1) at 2-8. Defendant's counsel represents that the offending posts addressed in that communication were removed from Defendants' social media sites without the need for the Court's intervention. (Doc. 38) at ¶ 2. Defendants also represent that they "made additional review and again attempted to remove all material that could be considered a violation of the Injunction." *Id*. As it relates to the posts reference in Plaintiff's Motion, Defendants state that they have removed them, despite believing that the material did not violate the Interlocutory Injunction. *Id*. Defendants' actions include deleting the Twitter account that contained the tweets at issue in Plaintiff's Exhibits B, C, and D, as well as removing the material referenced in Exhibit E, F, G, H, and J. *Id*. at ¶¶ 2-9. As for Exhibit I, Defendants contend that the post does not violate the Interlocutory Injunction. *Id*. at ¶ 8.

To the extent Plaintiff's Motion for Contempt is based upon the various social media posts of Defendants, the undersigned finds that Plaintiff has failed to meet its burden of producing clear and convincing evidence that Defendants violated the Court's Interlocutory Injunction. In pertinent part, the Injunction reads: "All Defendants shall *cease* using the name "ShowCoat," "Volumax," "Pop Shot," or using the ShowCoat or similar marks in the manufacture, marketing, or sale of any goods, or acting in concert with others

7

to do the same." (Doc. 19) at ¶ 1 (emphasis added). It is the undersigned's opinion that outdated social media posts, some of which were made years before this suit commenced, do not violate the Court's order to *cease* using the names of Plaintiff's products for the purpose of selling Defendants' goods. To be sure, it is possible, as Plaintiff points out, that someone searching on the internet for ShowCoat could potentially be directed to outdated social media posts from Defendants that reference the product during a timeframe when they were dealers of the product. However, the undersigned does not find that the simple act of retaining such posts, particularly those that are not prominently displayed on social media, constitutes an act of using the names of Plaintiff's products to market or sell goods. Had the parties wished for Defendants to *expunge* their social media accounts of any and all reference to Plaintiff's products, such language should have been included in the Interlocutory Injunction they proposed to the Court.

Further, the undersigned notes that it appears that Defendants have attempted to comply with the Court's order, and that they continue to attempt compliance when additional material is brought to their attention, even to the extent of deleting the Twitter account that contained the allegedly offending materials. While it is clear that "substantial, diligent, or good faith efforts" to comply with a court order "are not enough" to escape a finding of contempt, *see F.T.C. v. Leshin*, 618 F.3d 1232-33 (11th Cir. 2010), the undersigned considers the fact that once a posting is made online, it may never be fully removed. Certainly, it is reasonable to conclude that Defendants could have found and removed the outdated posts because Plaintiff was able to find them; however, the

8

undersigned will not presume such, particularly considering the nature of online activity. Accordingly, the undersigned declines to certify that these facts establish contempt of this Court's Interlocutory Injunction, and, therefore, RECOMMENDS that Plaintiff's Motion for Contempt (Doc. 30) be DENIED as to Defendants' social media postings.

### 2. *Spoliation of Evidence*

After engaging in certain discovery, Plaintiff supplemented its Motion for Contempt. *See* (Doc. 61). In that supplement, Plaintiff asserts that discovery has shown that: (1) Defendants stole and used Plaintiff's proprietary formulas; (2) Defendant Andy Butler and his son, Harmon, destroyed Harmon Butler's cell phone, which was used to take photographs of Plaintiff's proprietary formulas; and (3) Defendant Andy Butler disposed of labels, which Plaintiff contends were counterfeit, of Plaintiff's ShowCoat products that he received back from police subsequent to a search executed on his home. *See generally id*. Specifically, Plaintiff points to the deposition testimonies of Defendant Andy Butler and Harmon Butler, which indicate that Harmon Butler traded in his cell phone, with the knowledge and approval of Defendant Andy Butler, sometime in October or November of 2018. *Id*. at 2-9. Plaintiff also points to the deposition testimony of Defendant Andy Butler, which indicates that he destroyed allegedly counterfeit ShowCoat labels after litigation began. *Id*. at 10. Although a specific date has not been established as to when the labels were destroyed, Defendant Butler testified in his deposition that he destroyed the labels "after our hearing." *Id*. The Court's first hearing in this case was held September 14, 2018, and the Court entered its Interim Interlocutory Injunction at that time prohibiting the

destruction of such evidence. *See* (Docs. 11, 12). For relief from Defendants' bad acts, Plaintiff requests that the Court strike Defendants' pleadings as a sanction or, at a minimum, give specific jury instructions as to the spoliation of the evidence. *Id*. at 10-11.

To the extent Plaintiff's Motion for Contempt is based upon destruction of Harmon Butler's cell phone and the allegedly counterfeit labels produced by Defendant Andy Butler, the undersigned concludes that Defendants have violated this Court's Interlocutory Injunction (or this Court's Interim Interlocutory Injunction). Specifically, the undersigned concludes that Defendant Andy Butler's actions violate paragraph three of the Interlocutory Injunction, which requires the parties to preserve, amongst other things, smart phones. The undersigned also concludes that Defendant Andy Butler's actions violate paragraph four of the Interim Interlocutory Injunction, which requires the parties to preserve "all materials related to the manufacture, marketing, or sale of livestock hair-enhancement products." (Doc. 19) at ¶¶ 3, 4. The clear and convincing evidence presented by Plaintiff shows that Defendant Andy Butler knew that his son, Harmon Butler, was "trading in" his cell phone, which was used by Harmon Butler to take pictures of Plaintiff's formulas. The clear and convincing evidence presented by Plaintiff also shows that Defendant Andy Butler destroyed allegedly counterfeit ShowCoat labels after the Court entered its Interim Interlocutory Order. Accordingly, the undersigned certifies that these facts establish contempt of this Court's Interlocutory Injunction and/or Interim Interlocutory Injunction, and, therefore, RECOMMENDS that Plaintiff's Motion for Contempt (Doc. 30) be GRANTED as to Defendants' spoliation of evidence.

### 3. Remedy for Spoliation

Because the undersigned has recommended that Plaintiff's Motion for Contempt be granted as to the spoliation of the cell phone and the labels, the undersigned will also make a recommendation regarding sanctions for Defendants' conduct. Plaintiff requests that the Court strike Defendants' pleadings entirely and enter a default judgment against them. (Doc. 61) at 10-11. Alternatively, Plaintiff requests that this Court give jury instructions regarding the spoliation of the evidence. *Id.*

The undersigned concludes that striking Defendants' pleadings is not warranted. *See In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1306 (11th Cir. 2006) (noting that, generally, the severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders). Instead, the undersigned recommends that, as for the spoliation of the cell phone, Plaintiff be allowed to hire a third-party forensics expert, at Defendants' expense, to attempt to recover any and all information from the cell phone that has been stored on any applicable cloud-based server. To the extent that information needed by Plaintiff cannot be recovered from the cloud-based server, the undersigned recommends that Plaintiff be afforded an adverse inference instruction regarding that unrecoverable evidence. As for the spoliation of the allegedly counterfeit labels, the undersigned is aware that there are police photographs from a search of Defendant Harmon's home, which reflect that Defendant Harmon possessed unauthorized ShowCoat labels. Further, the undersigned is aware that there are

11

records regarding the purchases made by Defendants to the label printing company that created the ShowCoat labels possessed by Defendants. Thus, to the extent Plaintiff wishes to introduce evidence regarding the counterfeit labels that cannot be garnered through the police photographs or invoices, the undersigned recommends that Plaintiff be afforded an adverse inference instruction regarding that unrecoverable evidence. The undersigned further recommends that all expenses associated with the recovery and/or recreation of the evidence spoliated shall be charged to Defendants, along with an award of attorney's fees and expenses associated with Plaintiff's filing of its supplement (Doc. 61) to its Motion for Contempt.

### E. Defendants' Counter Motion for Contempt

Defendants submit the following evidence that Plaintiff is in violation of the Interlocutory Injunction.

1. The Facebook page belonging to Plaintiff listing Andy Butler and Chris Wilson as "dealers." (Doc. 37-2) at 1.

2. A Facebook post on Plaintiff's page containing a photograph of Harmon Butler's hair, claiming that it is the hair of a former cancer patient who used ShowCoat to regrow his hair. (Doc. 37-3) at 1.

The undersigned finds that Defendants have failed to produce clear and convincing evidence that Plaintiff violated the Court's Interlocutory Injunction. In pertinent part, the Injunction reads:

> Plaintiff, its agents, officers, and members shall refrain from using Defendants' names or disclosing identifying information about Defendants *in connection with this matter*, or acting in concert with others to do the same. In addition, Plaintiff shall delete, destroy, or remove, to the extent possible,

> all press releases, announcements, social media posts, or any other public materials it has produced using Defendants' names or disclosing identifying information about Defendants *in connection with this matter*. Nothing herein prevents Plaintiff from informing the public that Wilson and Butler are no longer dealers for Plaintiff, nor that there may be counterfeit products in circulation in the market, but such information shall not be presented in a way that implicates Defendants or associates them with wrongdoing[.]

(Doc. 19) at ¶ 5 (emphasis added). Plaintiff's posts do not violate this Court's Interlocutory Injunction because they do not reference Defendants' names or information *in connection with this matter*. Further, there is nothing in the Court's order requiring Plaintiff to remove any reference that Defendants are "dealers" from its social media pages. Accordingly, the undersigned declines to certify that these facts establish contempt of this Court's Interlocutory Injunction, and, therefore, RECOMMENDS that Defendants' Counter Motion for Contempt (Doc. 38) be DENIED.

## II.   CONCLUSION

For the reasons set forth more fully above, it is the

RECOMMENDATION of the undersigned that Plaintiff's Motion for Contempt (Doc. 30), as supplemented, be GRANTED in part and DENIED in part. Specifically, the undersigned RECOMMENDS that Plaintiff's Motion be DENIED as it relates to Defendants' social media postings and GRANTED as to the spoliation of evidence. Additionally, it is the

RECOMMENDATION of the undersigned that Defendants' Counter Motion for Contempt (Doc. 38) be DENIED. It is further

13

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **June 21, 2019**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*). The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

DONE this 7th day of June, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE