IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHOWCOAT SOLUTIONS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:18-cv-789-ALB ) |
| ANDY BUTLER, *individually and d/b/a* BUTLER CATTLE COMPANY, HARMON BUTLER, CHRIS WILSON, *individually and d/b/a* WILSON FARMS, and CODE BLUE, LLC, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the court on Plaintiff ShowCoat Solutions, LLC's Motion for Permanent Injunction, (Doc. 162), and Motion for Entry of Final Judgment, (Doc. 166). Upon consideration, the motions are GRANTED.

## BACKGROUND

ShowCoat Solutions, LLC develops and distributes cattle haircare products, including ShowCoat, Dress Coat, Volumax, and PopShot.

Chad Folger and Kellie Folger, his wife, founded ShowCoat Solutions and employed mostly family members, with the exception of a local high schooler, Harmon Butler. One day while Harmon was at work, he took a picture of the formula for ShowCoat with his cell phone.

As ShowCoat Solutions grew, it allowed other people to distribute its products, including Harmon's father, Andy Butler, and a family friend, Chris Wilson. Over time, Folger began to suspect that Butler and Wilson were distributing counterfeit products to their customers. Folger appeared unannounced at Butler's house, saw what he believed to be a counterfeiting operation, and called the police. The police executed a warrant at the Butler residence where they found a handwritten copy of the ShowCoat formula next to barrels, pipes, and other materials used to create shampoo products.

The Folgers terminated their distribution relationship with Butler and Wilson. Shortly thereafter, Andy Butler and Chris Wilson formed their own cattle haircare company, Code Blue, LLC and sold products similar to ShowCoat Solutions'.

ShowCoat Solutions sued Defendants for trademark infringement; unfair competition, false designation of origin; federal trademark dilution; unfair competition, passing off; copyright infringement; violation of the Alabama Trade Secrets Act; breach of contract; tortious interference with a contractual relation; and trespass. Defendants countersued for malicious prosecution, unjust enrichment, and assault.[1]

At trial, Folger explained the process he used to develop his products. He developed ShowCoat over a period of three intense years, with subsequent tweaks

---

[1] These claims and counterclaims include only those ultimately sent to the jury.

as Folger received feedback from his customers. As for Dress Coat, Folger said that it took significantly less time to make than ShowCoat because it required only a few tweaks from the basic ShowCoat formula. At the end of the trial, the jury made the following findings regarding the trademark, copyright, and trade secrets claims that are the basis for ShowCoat Solutions' motion for a permanent injunction:

Andy Butler and Chris Wilson willfully infringed the ShowCoat and Dress Coat trademarks, for which the jury awarded $200,000 in compensatory damages against Butler and $175,000 against Wilson;

Andy Butler, but not Chris Wilson, engaged in Unfair Competition, False Designation of Origin, for which the jury awarded $40,000 in compensatory damages against Butler;

Andy Butler and Chris Wilson caused dilution by tarnishing ShowCoat Solutions' trademarks of ShowCoat and Dress Coat, but not Pop Shot and Volumax, for which the jury awarded $100,000 against Butler and $75,000 against Wilson in compensatory damages;

Andy Butler, but not Chris Wilson, willfully infringed on ShowCoat Solutions' copyright, for which the jury awarded ShowCoat Solutions $100,000 against Butler;

Harmon Butler, Andy Butler, and Code Blue, LLC (but not Chris Wilson) violated the Alabama Trade Secrets Act, for which the jury awarded compensatory

3

damages of $25,000 against Harmon Butler, $250,000 against Andy Butler, and $750,000 against Code Blue, LLC, with punitive damages of $10,000 against Harmon Butler and $100,000 against Andy Butler. (Doc. 158 at 1–13).

## DISCUSSION

Based on the jury's verdict, ShowCoat Solutions has requested entry of a permanent injunction against Andy Butler, Harmon Butler, Chris Wilson, and Code Blue, LLC. ShowCoat Solutions requests that the Court prevent Defendants from ever again participating—in any manner—in the livestock haircare industry. Defendants conceded that some injunctive relief is appropriate, but they argue that the scope should not be as broad as ShowCoat Solutions requests. The Court's broad discretionary injunctive power is rooted in equity. And equity is distinguished from law by "is its flexible and discretionary nature, its ability to respond to real-world practicalities, and its general aversion to rules that let bad actors capitalize on legal technicalities." *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1359 (11th Cir. 2019) (citing Roscoe Pound, *The Decadence of Equity*, 5 Colum. L. Rev. 20 (1905)). Accounting for equity's flexibility and concerns for real-world practicalities, the Court will limit the scope of injunctive relief to no more than necessary to remedy the harm to ShowCoat Solutions.

**I. Injunctive Relief is Appropriate Under Both Federal and Alabama Law**

    **A. Federal Injunctive Relief for Trademark and Copyright Violations**

ShowCoat Solutions requests injunctive relief against Andy Butler and Chris Wilson for their trademark and copyright violations. *See* 15 U.S.C. § 1116(a) (permitting injunctive relief for trademark violations); 17 U.S.C. § 502(a) (same for copyright violations). Under federal law, the Court will grant or deny injunctive relief "'consistent with traditional principles of equity' based on the facts of the particular case." *Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 984 (11th Cir. 2016) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006)). The Court's decision to award injunctive relief is guided by four factors: (1) the plaintiff has suffered an irreparable injury; (2) legal remedies, such as monetary damages, are inadequate compensation for that injury; (3) the balance of hardships favors the plaintiff over the defendant; and (4) the injunction would not disserve the public interest. *eBay Inc.*, 547 U.S. at 391.

Chris Wilson and Andy Butler have caused ShowCoat Solutions irreparable injury by hijacking control of its intellectual property. In the Eleventh Circuit, "grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (quoting *Pappan Enters. Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998). Trademark infringement has been specifically cited as causing irreparable harm, even with the availability of monetary damages. *Askins & Miller Orthopaedics, P.A.*, 924 F.3d at 1358–59 (citing *Levi Strauss & Co. v. Sunrise*

5

*Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995)). Here, Andy Butler and Chris Wilson have infringed ShowCoat Solutions' trademarks, and Butler has violated ShowCoat Solutions' copyright.

ShowCoat Solutions' injuries cannot be adequately remedied at law, so an equitable remedy is warranted. Despite the money awarded by the jury, ShowCoat Solutions still stands to suffer additional harm if Butler and Wilson are free to continue infringing its trademarks or violating its copyright. And merely asking ShowCoat Solutions to "sit on its hands" until it can "bring an action for money damages does not qualify as an 'adequate' legal remedy." *See id.* at 1358.

On balance, the equities of granting or withholding equitable relief also favors ShowCoat Solutions, because it faces greater future harm. Despite the jury's award of damages, ShowCoat is still subject to further harm absent injunctive relief. As noted above, ShowCoat Solutions has irretrievably lost control of its trademarks and copyright, which further affects its customers, market share, and ability to control its reputation. And this harm was inflicted by a competitor to take a portion of ShowCoat Solutions' market share. While ShowCoat Solutions may recover its customers and market share, the balance of equities still favors an injunction to prevent Defendants from capitalizing on the damage they have caused.

As for Andy Butler and Chris Wilson, an injunction would simply prevent them from doing what the law already prohibits. The balance of the equities strongly

favors granting an injunction to prevent Butler and Wilson from wrongfully benefitting from ShowCoat Solutions' intellectual property.

Finally, injunctive relief would not disserve the public interest because the public has a significant interest in protecting intellectual property. While the Court merely asks if an injunction would not disserve the public interest, granting injunctive relief in this case would affirmatively serve the public interest by dissuading other would-be misappropriation.

Taking into account each of these factors, injunctive relief is warranted against Andy Butler and Chris Wilson.

### B. Alabama Injunctive Relief for Trade Secrets Violations

ShowCoat Solutions also requests injunctive relief against Andy Butler, Harmon Butler, and Code Blue, LLC under the Alabama Trade Secrets Act, which allows injunctive relief to the extent it is not "duplicative" of any actual damages or recovery of profits. *See* Ala. Code § 8-27-4 (1975). Under Alabama law, the court will enter a permanent injunction after a plaintiff succeeds on the merits of his case if (1) there is a substantial threat of irreparable injury absent an injunction; (2) the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant; and (3) granting the injunction will not disserve the public interest. *City of Gadsden v. Boman*, 143 So. 3d 695, 703 (Ala. 2013) (quoting *Walden v. ES Capital, LLC*, 89 So. 3d 90, 105 (Ala. 2011)).

The jury's verdict establishes that Andy Butler, Harmon Butler, and Code Blue, LLC have caused ShowCoat Solutions irreparable injury. Like trademark and copyright violations, trade secret misappropriation can result in damaged or stolen customer relationships and goodwill. Here, the trade secret that Andy Butler, Harmon Butler, and Code Blue, LLC misappropriated—the ShowCoat formula—took years to develop and is at the heart of ShowCoat Solutions' products. Like demons flying from Pandora's box, misappropriated trade secrets cannot be replaced.

The balance of hardships favors ShowCoat Solutions because it has irretrievably lost its trade secrets. But ShowCoat Solutions' proposal to ban all the defendants from participating in the livestock haircare industry *indefinitely* would give ShowCoat Solutions greater relief than it needs to remedy the misappropriation of its trade secrets. It would also place an undue burden on Andy and Harmon Butler, particularly on Harmon. He is currently attending college and plans to make his living in the livestock industry. Doing so would be difficult, if not impossible, in the face of the proposed injunction. Accordingly, as explained in more detail below, the Court concludes that the balance of the equities does not justify the degree of injunctive relief that ShowCoat Solutions requests.

The public interest would be served by appropriate injunctive relief because the public has a significant interest in protecting intellectual property. In fact,

denying injunctive relief in this situation would amount to forcing companies to sell their trade secrets to those who steal them. *See 3M v. Pribyl*, 259 F.3d 587, 607 (7th Cir. 2001).

Taking into account each of these factors, injunctive relief is warranted against Andy Butler, Harmon Butler, and Code Blue, LLC.

## II. Scope of Injunctive Relief

When the Court exercises its broad discretionary equitable powers to issue an injunction, the order must "state the reasons why it issued; state its terms specifically; and describe in reasonable detail—and not by refer[ence] …—the act or acts restrained or required." Fed. R. Civ. P. 65(d). Having stated above the reasons warranting equitable relief, the Court's next task is to decide what behavior to enjoin, where to enjoin it, and for how long.

### A. Federal Injunctive Relief for Trademark and Copyright Violations

ShowCoat Solutions requests, and Defendants agree, that Andy Butler and Chris Wilson should be enjoined from violating ShowCoat Solutions' intellectual property rights. To avoid merely telling Butler and Wilson to "obey-the-law," the Court specifically enjoins Butler and Wilson, and all persons acting in concert or participating with them, (1) from referencing or using ShowCoat Solutions' trademarks in "ShowCoat" or "Dress Coat" or any similar mark, whether on a product or advertisement, virtual or otherwise; (2) selling any products, actual or

9

counterfeit which infringe on the "ShowCoat" or "Dress Coat" marks; and (3) acting in any way calculated to cause purchasers or consumers to believe Defendants' products or services originate with or are produced or sold under the control and supervision of ShowCoat, or are affiliated, connected, associated, sponsored, guaranteed, or approved by ShowCoat.

In accordance with the jury's findings that only Butler and Wilson violated ShowCoat Solutions' trademarks and only Butler violated its copyright, the scope of the Court's injunction is accordingly limited. Of course, this injunction also applies to all parties; officers, agents, servants, employees, and attorneys of the parties; and other persons in active concert or participation with them. Fed. R. Civ. P. 65(d)(2). And ShowCoat Solutions can bring suit under the applicable trademark and copyright laws for any violations outside the scope of the injunction.

### B. Alabama Injunctive Relief for Trade Secrets Violations

ShowCoat Solutions argues that because Defendants' misappropriation of its formula will forever taint Defendants' products, Defendants should be prevented from ever again participating in any manner in the livestock haircare industry. But ShowCoat Solutions' request overlooks the unique nature of trade secrets. *See, e.g.*, *Bell Helicopter Textron Inc. v. Airbus Helicopters*, 78 F. Supp. 3d 253, 273 (D.D.C. 2015) (citing *LG Electronics U.S.A., Inc. v. Whirlpool Corp.,* 798 F. Supp. 2d 541, 563 (D. Del. 2011)) ("Some district courts accordingly have declined to issue

permanent injunctions based solely on competitive harm resulting from the 'head start' afforded by infringement."). Injunctive relief for trade secrets misappropriation is warranted to take away the benefit that a defendant-competitor gained by taking the trade secret instead of doing his or her own product development. Under the Alabama Trade Secrets Act, "broad discretion is given the court to fashion appropriate equitable relief. The duration of an injunction normally is for the period the trade secret is expected to remain a secret." Thad G. Long, The Alabama Trade Secrets Act, 18 Cumb. L. Rev. 557, 577 (1988) (quoting Ala. Code § 8-27-4 cmt). To that end, injunctive relief should "preclude defendant's wrongful activities for a period of time reasonably necessary to protect plaintiff's interests …." 4 Milgrim on Trade Secrets § 15.02 [1][d]. To appropriately restrict the scope of the injunction, the Court will use the most commonly employed standard: "the period of time that would be required for independent development …." *Id.*

Based on the evidence at trial, Alabama trade secrets law, and the balance of the equities, the Court concludes that four types of injunctive relief are appropriate.

First, the Butlers and Code Blue, LLC should be permanently prohibited from using or otherwise referring to the stolen formula for ShowCoat. The Court finds that, had the Defendants not taken the formula, it would have remained a secret indefinitely. They should not be able to use the formula again to develop a product for any commercial or personal purpose.

Second, for three years, the Butlers should be prohibited from working in the livestock haircare industry in any manner whatsoever, including, but not limited to as an employee, consultant, or otherwise, with or without compensation. This period of time is sufficient, but not greater than necessary, to remove the unlawful benefit that the defendants gained by taking the ShowCoat formula. Folger testified that the stolen trade secret was not easily susceptible to reverse engineering. But it is undisputed that similar formulas for livestock hair products are used by others in the industry and that ranchers and farmers can develop their own formulas through trial and error. So, left to their own devices, the Butlers reasonably could have independently developed a comparable formula within three years. Issuing a permanent injunction against the Butlers for longer than this period, at least on the facts of this case, would be inequitable. Moreover, this aspect of the injunction will not extend to education or personal livestock ownership, which will allow the Butlers to continue with non-commercial livestock activities that do not affect ShowCoat Solutions.

Third, it is appropriate to permanently enjoin Code Blue, LLC from being sold or transferred in whole or in part and from distributing any product for the care of the hair of livestock of any sort or working in the livestock haircare industry in any manner whatsoever. The company faces a substantial judgment for monetary damages, the likely result of which is insolvency. A permanent injunction against

the company would prevent the inequitable result of allowing the company to retain any lingering goodwill or brand strength it enjoys only through misappropriating ShowCoat Solutions' trade secrets. Should the Butlers (after the three-year independent development period) or Wilson decide to continue working in the livestock haircare industry, they should have to compete on their own ideas and products, without relying on a company that was built on the misappropriation of ShowCoat Solutions' trade secrets.

Finally, although the jury found that Chris Wilson did not violate the Alabama Trade Secrets Act, under the Court's equitable authority, and as noted in the Federal Rules, the Court will enjoin Wilson from cooperating with, assisting, consulting, or otherwise working in concert with the Butlers or Code Blue, LLC in any way that would violate the injunctions pertaining to them. Fed. R. Civ. P. 65(d)(2) (binding "other persons who are in active concert or participation"). To that end, Wilson cannot consult, assist, or cooperate with the Butlers regarding work in the livestock haircare industry for three years. He will similarly be enjoined from using his shares, ownership, or control over Code Blue, LLC to distribute or market products in the livestock haircare industry permanently.

## CONCLUSION

Based on the foregoing, the Motion for Permanent Injunction and the Motion for Entry of Final Judgment are GRANTED. Defendants Andy Butler, Harmon

Butler, Chris Wilson, and Code Blue, LLC are accordingly **ENJOINED** and **RESTRAINED** as further set out in the Final Judgment and Injunction entered this date.

**DONE** and **ORDERED** this 19th day of March 2020.

/s/ Andrew L. Brasher
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE