IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHOWCOAT SOLUTIONS, LLC, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO. 1:18-cv-789-ECM |
| ) | (WO) |
| ANDY BUTLER, *et al*., ) | |
| ) | |
|    Defendants. ) | |
| ) | |

**MEMORANDUM OPINION and ORDER**

On February 14, 2022, Plaintiff ShowCoat Solutions, LLC ("ShowCoat") filed a motion for contempt against Defendant Harmon Butler ("Butler"). (Doc. 222). For the reasons that follow, the Court concludes that the motion is due to be granted.

ShowCoat alleges that Harmon Butler violated the Court's June 18, 2020, Amended Permanent Injunction,[1] (doc. 204), by working as a "show jock" at the Alabama Junior Beef Round Up Cattle Show on July 16, 2021 in Montgomery, Alabama. (Doc. 223 at 2). In addition, ShowCoat alleges that Butler assisted at two other cattle shows, including one on January 8, 2022, in Oklahoma City, Oklahoma. (*Id*.). Butler contends that he did not violate the Court's injunction because he "helped individually groom cattle for [him]self and friends in cooperation with [his] college classes with specific emphasis on helping [his]

---

[1] The Amended Judgment awarded attorney's fees but did not change any of the provisions of the permanent injunction issued on March 19, 2020. (*See* Doc. 169).

school recruit new students and to receive credit for doing so." (Doc. 229 at 1) (alterations added).

## BACKGROUND

"ShowCoat Solutions, LLC develops and distributes cattle haircare products." (Doc. 167 at 1). Butler is a former employee of ShowCoat who illicitly photographed the ShowCoat formula and then shared it with his father, Andy Butler, who created a fake product using the formula. (*Id*. at 1-2). ShowCoat eventually sued Butler and others for violating the Alabama Trade Secrets Act, and the case proceeded to trial. (*Id*. at 2). The jury found in favor of ShowCoat and awarded it compensatory and punitive damages against Butler. (Doc. 158 at 13).

On June 18, 2020, the Court entered an amended permanent injunction against Butler prohibiting him

> from working in the livestock haircare industry in any manner whatsoever, including, but not limited to, as an employee, consultant, or otherwise, with or without compensation, until March 19, 2023, which is three years from the date of this Order. This paragraph of the Order does not extend to educational or personal livestock activities.

(Doc. 204 at 5).

On February 14, 2022, ShowCoat filed the motion for contempt. (Doc. 222). Butler filed a *pro se* response to the motion on March 1, 2022, asserting that his actions fell within the educational exception because the activities were in conjunction with his college classes. (Doc. 229). The Court held an evidentiary hearing on December 1, 2022.

2

## DISCUSSION

"[C]ivil contempt proceeding[s are] brought to enforce a court order that requires [a party] to act in some defined manner." *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (*quoting Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990)) (alterations in original). The Court has the inherent power to enforce its lawful orders through civil contempt. *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002); *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991). "Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to "coerce the defendant into compliance" with an injunction or "compensate the complainant for losses" stemming from the defendant's noncompliance with an injunction. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019).

In this case, ShowCoat bears the initial burden of establishing by clear and convincing evidence that Butler has violated the injunction issued by the Court. *See McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000); *Commodity Futures Trading Comm'n. v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992); *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th 1990). "Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply." *Commodity Futures*, 950 F.2d at 1529; *Howard Johnson*, 892 F.2d at 1516. The burden shifts back to the Plaintiff only if Butler makes a sufficient showing of inability to comply. *Community Futures*, 950 F.2d at 1529.

3

> We will make a finding of civil contempt - that is, willful disregard of the authority of this Court - only upon a showing that the alleged contempt is *clear and convincing*. See *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000); *NLRB v. Crockett-Bradley, Inc.*, 598 F.2d 971, 975 (5th Cir. 1979). "This burden of proof is more exacting than the 'preponderance of the evidence' standard but, unlike criminal contempt, does not require proof beyond a reasonable doubt." *Jordan v. Wilson*, 851 F.2d 1290, 1292 (11th Cir. 1988) (per curiam). The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was *clear and unambiguous*; and (3) the alleged violator had the ability to comply with the order.

*Ga. Power Co. v. Nat'l Labor Relations Bd.*, 484 F.3d 1288, 1291 (11th Cir. 2007) (emphasis in original).

"This standard reflects the fact that civil contempt is a "severe remedy." *Taggart*, 139 S. Ct. at 1801-02. The Court's order is "subject to reasonable interpretation," and the Court "will construe any ambiguities or uncertainties in . . . a light favorable to the person charged with contempt." *Ga. Power Co.*, 484 F.3d at 1291. The standard, however, is an objective one. *Taggart*, 139 S. Ct. at 1802.

**A. Contempt**

When a party disobeys a lawful court order, the Court may "hold the disobedient party in contempt." Fed. R. Civ. P. 70(e). ShowCoat contends that Butler violated the Amended Permanent Injunction by working as a "show jock" at cattle shows in June 2021, July 2021, and January, 2022. A "show jock" is an individual who prepares cattle for shows by preparing the hair of the livestock. (Doc. 223-4 at 3, para. 4).

The evidence adduced at the hearing demonstrates that at a cattle show in Montgomery, Alabama on July 16, 2021, Butler violated the permanent injunction by

4

grooming a cow at that event. The evidence further demonstrated that on January 8, 2022, Butler violated the injunction by assisting others with grooming cattle at a cattle show in Oklahoma City, Oklahoma. Butler admitted that he groomed cattle at both events.

The permanent injunction prohibited Butler from working in the livestock haircare industry for a period of three years. There is no dispute that the injunction issued against Butler was in effect at the time of both cattle shows and remains in effect until March 19, 2023. Butler does not dispute that the injunction was specific and definite, and he was on notice of the prohibited conduct.

Butler argues that he was recruiting students for his school and thus, his conduct was protected by the educational exemption contained in the injunction. While Butler was enrolled in college at the time of the June 2021 event, he concedes that he was no longer a student in January, 2022. More importantly, however, at the evidentiary hearing, Butler admitted that his involvement at both cattle shows was not in conjunction with any course work, course credit or other educational purpose. Butler asserts that he did not intend to violate the permanent injunction; however, lack of intent is of no import. "The absence of willfulness does not relieve from civil contempt. . . . Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Accordingly, the Court concludes that ShowCoat has demonstrated by clear and convincing evidence that Butler violated the amended permanent injunction on July 16, 2021 and January 8, 2022.

### B. Sanctions

ShowCoat requests the Court enter a monetary sanction against Butler for the violation of the permanent injunction as well as an extension of the injunction and an award of attorney's fees. ShowCoat also suggests Butler should be jailed until he purges himself of the contempt. "Sanctions may be imposed to coerce the contemnor to comply with the court's order, but may not be so excessive as to be punitive in nature." *Citronelle-Mobile*, 943 F.2d at 1304. At the evidentiary hearing, Butler testified that he is currently working at a parts company, unrelated to the cattle industry, in Oklahoma. He earns $16 per hour and works between 40 and 50 hours a week. He is supporting his girlfriend and new baby. ShowCoat has not demonstrated that it suffered any financial injury as a result of Butler's two violations of the permanent injunction. Thus, the Court concludes that a monetary sanction is not appropriate in this case. "Although the district court has the authority to impose sanctions designed to ensure compliance, the sanctions cannot be greater than necessary to ensure such compliance." *Id*. The Court concludes that extending the permanent injunction against Butler for a period of three years from the date of the last violation, January 8, 2022, until January 8, 2025, is a sufficient but not greater than necessary sanction to punish Butler and ensure his compliance with the Court's injunction. The Court will also limit the educational exception to extend only to educational activities that are specifically course-related and overseen by an instructor of an educational institution where Butler is registered as a student.

Finally, ShowCoat has incurred legal fees to demonstrate that Butler violated the amended permanent injunction entered in this case. An award of attorney's fees for

pursuing the motion for contempt is within the Court's discretion after a finding of civil contempt, and is appropriate in this case. *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1534 (11th Cir. 1986). "[A]ttorneys' fees in a civil contempt proceeding are limited to those reasonably and necessarily incurred in the attempt to enforce compliance." *Abbott Laboratories v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000) (alteration added). Thus, the Court concludes that ShowCoat is entitled to reasonable attorney's fees and costs in this matter.

## CONCLUSION

Accordingly, for the reasons as stated, it is

ORDERED as follows:

1. The motion for contempt (doc. 222) is GRANTED.

2. The Court finds Defendant Harmon Butler in contempt of Court based on his violations of the Amended Final Judgment and Permanent Injunction issued on June 18, 2020.

3. As a sanction for his contempt, Defendant Harmon Butler is ENJOINED from working in the livestock haircare industry in any manner whatsoever, including, but not limited to, as an employee, consultant, or otherwise, with or without compensation, until January 8, 2025, which is three years from the date of the last violation of the Amended Permanent Injunction. This paragraph of the Order does not extend to personal livestock activities or educational activities that are specifically course-related and overseen by an instructor of an educational institution where Butler is registered as a student.

4. Within twenty-one (21) days of the date of this Order, the Plaintiff may file a claim for attorney's fees and costs incurred in the pursuit of this motion.

Done this the 30th day of January, 2023.

                                  /s/Emily C. Marks
                              EMILY C. MARKS
                              CHIEF UNITED STATES DISTRICT JUDGE